928 F.2d 278
 18 Media L. Rep. 2344
 Ferris J. ALEXANDER and U.S. Video, Inc., a Minnesota
corporation, Appellees,
v.
The CITY OF MINNEAPOLIS, a municipal corporation, Appellant.
CITY OF MINNEAPOLIS
v.
Ferris J. ALEXANDER.
 No. 89-5351.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1990.
Decided March 18, 1991.
Rehearing and Rehearing En Banc
Denied May 30, 1991.
 
 David Gross, Minneapolis, Minn., for appellant.
 Randall D.B. Tigue, Minneapolis, Minn., for appellees.
 Before BOWMAN and WOLLMAN, Circuit Judges, and STUART, District Judge.*
 BOWMAN, Circuit Judge.
 
 
 1
 Defendant City of Minneapolis (City) appeals an order by the District Court declaring the Minneapolis Code of Ordinances Sec. 540.410, as amended November 7, 1986, unconstitutional on its face and as applied to plaintiffs. Alexander v. City of Minneapolis, 713 F.Supp. 1296 (D.Minn.1989). The ordinance at issue requires certain new and existing adults-only businesses to operate within a specifically zoned district of the city. For reasons stated below, we reverse the decision of the District Court.
 
 I.
 
 2
 For more than a decade, the City of Minneapolis has attempted to regulate adults-only businesses operating within the city limits. As amended November 7, 1986, Minneapolis Code of Ordinances Sec. 540.410 is the third version of the zoning ordinance enacted by the City to "insure that the[ ] adverse effects [of certain uses] will not contribute to the blighting or downgrading of the surrounding neighborhood." Sec. 540.410(a). The ordinance requires adults-only bookstores,[1] motion picture theaters,[2] and entertainment centers to operate only within the B4 Central Business District of the city. Sec. 540.410(c)(1). Adults-only motion picture theaters are further restricted by another zoning ordinance to subdistricts B4S and B4C. In addition, these businesses, as well as adults-only massage parlors, rap parlors, and saunas, cannot operate "within one thousand (1,000) feet of a residentially zoned district, and within five hundred (500) feet of a church, a state-licensed day care facility ... public library, and public educational facilities which serve persons age seventeen (17) or younger, an elementary school or a high school." Sec. 540.410(c)(2). Only one adult business is allowed per block face. The ordinance regulates both new and existing adult businesses. Those facilities not complying with the ordinance were required to move to a permitted location by December 1, 1988.
 
 
 3
 At the time this action for declaratory and injunctive relief was filed against the City, plaintiff Ferris Alexander owned five adult bookstores and two theaters. Plaintiff U.S. Video operates a video tape rental facility in Minneapolis. The plaintiffs argued that the amended ordinance violated the First and Fourteenth Amendments. Following a four-day trial, the District Court found the "substantial and significant" language of the ordinance defining adults-only bookstores was unconstitutionally vague. 713 F.Supp. at 1303. In an alternative holding on the First Amendment issues, the court found that although the City's enactment of the ordinance was not based on an impermissible intent to restrict the content of materials provided by the businesses, enforcement of the ordinance would "suppress and greatly restrict the access to protected speech." 713 F.Supp. at 1305. Based on this finding, the court held the ordinance unconstitutional on First Amendment grounds.
 
 
 4
 On appeal, the City argues that neither plaintiff has standing to challenge section 540.410 for vagueness, that the ordinance is not unconstitutionally vague, and that the District Court erred as a matter of law because it applied the wrong legal standard when it determined that the ordinance did not allow for reasonable alternatives for communication of protected speech. On May 23, 1990, a week after the oral arguments in this appeal were heard by this Court, Alexander was convicted on criminal charges under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. Sec. 1962(a), (c), and (d) (1988). On August 6, 1990, Alexander lost all interests and rights in his adults-only bookstores along with other properties forfeited to the United States as a result of his racketeering conviction. United States v. Ferris J. Alexander, Criminal No. 4-89-85, 1990 WL 117882 (D.Minn. August 6, 1990). On September 10, 1990, we granted a motion by the City to declare the issues relating to adult bookstores once owned by Alexander as moot. Alexander v. City of Minneapolis, No. 89-5351 (8th Cir. Sept. 10, 1990) (Partial Judgment). Therefore, our decision today is limited to the remaining issues relating to the theatres owned by Alexander and to the video rental store operated by U.S. Video.
 
 II.
 
 5
 In its decision that section 540.410 is void for vagueness, the District Court did not specifically address the issue of whether either plaintiff had standing to challenge the ordinance for this alleged constitutional defect. Instead, the court proceeded directly to the merits of plaintiffs' due process attack and "agree[d] with plaintiffs in that the 'substantial and significant' language in the ordinance is unconstitutionally vague." 713 F.Supp. at 1303. Although the District Court has not ruled on the question of standing, "we are required to address the issue.... The federal courts are under an independent obligation to examine their own jurisdiction, and standing is 'perhaps the most important of [the jurisdictional] doctrines.' " FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) (quoting Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)).
 
 
 6
 Plaintiffs argue that section 540.410 is unconstitutionally vague because its language does not enable them to determine whether their businesses are covered by the ordinance or, if so, what they are required to do to comply with it. We note that this challenge is limited only to the portion of the ordinance which defines adult bookstores. The "substantial and significant" language which the District Court found to be unconstitutionally vague is not contained in the sections of the ordinance defining adult theaters or other establishments that the City attempts to regulate. The record offers not the slightest hint of a vagueness attack on the "regularly or routinely" language of the ordinance defining adults-only motion picture theaters. Thus, with respect to plaintiff Alexander, it is unnecessary for us to determine whether he has standing to challenge for vagueness a section of this ordinance which applies only to the bookstores that he no longer owns. This issue is moot. It is also unnecessary for us to determine whether Alexander has standing to challenge the ordinance for vagueness as it applies to his theaters because he has not made any such challenge in either the court below or this Court.
 
 
 7
 A different analysis is required to determine whether plaintiff U.S. Video, which arguably might be a "bookstore" within the meaning of the ordinance, has standing to attack section 540.410(b)(1) for vagueness or any other alleged constitutional defects. To meet the standing requirement, a plaintiff must show that, as a result of the putatively illegal conduct of the defendant, he has suffered an " 'actual or threatened injury' " redressable by the court. Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979)).
 
 
 8
 At trial, Scott Sarkis, the general manager for U.S. Video, testified that U.S. Video operated a video-tape rental store in Minneapolis located outside the Central Business District. He explained that the video-tapes classified as "adults only"--approximately 30 percent of the store's inventory--are segregated from the general tapes on display for rental. A customer must be at least 18 years of age to enter the adults-only section of the store in which the tapes are shelved in plain boxes with only the titles displayed. Mr. Sarkis testified that the store occasionally sells used rental tapes to make room for newer releases. It also places special orders for customers wishing to purchase a particular film on tape. The sale of tapes, according to Mr. Sarkis, does not account for a large percentage of the store's business.
 
 
 9
 At first glance, a literal reading of section 540.410(b)(1) suggests that the video-tape rental store operated by U.S. Video might fall within the definition of an adults-only bookstore.[3] However, William Nordrum, Jr., the zoning supervisor of the City's building inspection department, testified that the Assistant City Attorney who authored the ordinance had ruled that stores primarily in the business of renting adult videos were not captured by section 540.410(b)(1). "[A]lthough there may be some sales," Mr. Nordrum testified, "[the City Attorney] just felt it would not trigger the adult ordinance." Trial Transcript vol. II, at 134. Based on this opinion from the City Attorney's Office, the building inspection department "didn't bother to inspect [video rental stores such as U.S. Video]." Trial Transcript vol. II, at 158.
 
 
 10
 Thus, U.S. Video has not even been subjected to preliminary enforcement; that is, notification from the City that the facility would have to comply with section 540.410. The record reveals absolutely no attempt, threat, or plan by the City to enforce the adult ordinance against U.S. Video. Furthermore, such action is not contemplated, as indicated by the opinion from the City Attorney's Office to which Mr. Nordrum testified. Clearly, U.S. Video has not suffered "any actual or threatened injury" as a result of the City's enactment of section 540.410. While the seeds of controversy may indeed be planted in the plain language of the ordinance, they have yet to sprout from the dirt let alone ripen into an issue appropriate for this court to consider. We therefore hold that U.S. Video lacks standing to challenge the constitutionality of section 540.410.
 
 
 11
 In light of our decision on the threshold issue of standing, we need not reach the merits of plaintiffs' claim that section 540.410 is void for vagueness. In turn, the decision of the District Court declaring the ordinance unconstitutionally vague is vacated.
 
 III.
 
 12
 The final issue before us is whether section 540.410 violates plaintiff Alexander's First Amendment rights. Noting that the ordinance does not ban adults-only businesses altogether, the District Court rejected plaintiff's arguments that section 540.410 was content-based. Instead, the court subjected the ordinance "to the analysis set out by the Supreme Court in Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1975) [sic], and more recently in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, [106 S.Ct. 925, 89 L.Ed.2d 29] (1986)," 713 F.Supp. at 1301, and correctly treated section 540.410 "as a form of time, place, and manner regulation." Renton, 475 U.S. at 46, 106 S.Ct. at 928. Under this analysis, the ordinance does not violate the First Amendment if it is "designed to serve a substantial governmental interest and [it does] not unreasonably limit alternative avenues of communication." Id. at 47, 106 S.Ct. at 928.
 
 
 13
 In enacting section 540.410, the City recognized that "serious objectionable operational characteristics [of certain businesses concentrated within an area have] a deleterious effect upon the use and enjoyment of adjacent areas." Sec. 540.410(a). The stated purpose of the ordinance is "to insure that these adverse effects will not contribute to the blighting or downgrading of the surrounding neighborhood." Sec. 540.410(a). Conceding that this stated purpose was permissible, Alexander argued that the real intent of the City was to eliminate adult businesses because of their content. The District Court disagreed, finding that the ordinance was designed to serve a substantial governmental interest, and thus, passed the first part of the Renton test. Alexander does not appeal this determination by the court.
 
 
 14
 Turning to the second part of the Renton test requiring reasonable alternative avenues of communication, the District Court examined the effect of the ordinance on adults-only businesses. Because both of Alexander's theaters are located outside the B4S and B4C segments of the Central Business District, section 540.410 requires Alexander to relocate these facilities within the permissible subdistricts. Alexander claimed that the ordinance would effectively put his theaters out of business because no reasonable opportunity existed for their relocation. Noting that the possibility that Alexander's theaters might be forced to close did not automatically invalidate the ordinance, the District Court determined that the validity of section 540.410 depended "on whether reasonable relocation possibilities exist for the protected businesses forced to shut down." 713 F.Supp. at 1304.
 
 
 15
 The court declined to decide as a matter of law whether the percentage of land theoretically open to adult businesses was sufficient to provide reasonable access to protected speech. Instead, it focused on the actual locations available for Alexander to relocate his theaters. Based on lengthy testimony concerning Alexander's unsuccessful attempts to relocate his businesses, the court concluded that "the ordinance works to suppress and greatly restrict the access to protected speech and is unconstitutional." 713 F.Supp. at 1305. We reverse this ruling because we believe the District Court applied an incorrect legal standard in striking down section 540.410.
 
 
 16
 "The inquiry for First Amendment purposes is not concerned with economic impact." American Mini Theatres, 427 U.S. at 78, 96 S.Ct. at 2456 (Powell, J., concurring). The District Court, however, did consider testimony by Alexander that the one potential relocation site he found was cost-prohibitive. Additional testimony from Alexander that no one would sell or lease property on which he could relocate his businesses was also irrelevant to the First Amendment inquiry. The record clearly shows that other owners of adult businesses were able to find suitable relocation sites. That Alexander must fend for himself "in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation." Renton, 475 U.S. at 54, 106 S.Ct. at 932. The Supreme Court has "never suggested that the First Amendment compels [a municipal g]overnment to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices." Id.
 
 
 17
 Our examination of the record satisfies us that numerous sites were potentially available for Alexander to relocate his theaters. Under the ordinance, theaters of this sort have access to at least 6.6% of the total acreage of commercial land;[4] within the available areas are a myriad of block faces, each a potential relocation site.[5] That Alexander could not secure property meeting his economic or commercial criteria does not render section 540.410 invalid. The City is not required by the First Amendment to provide Alexander with an actual site available to relocate his theatres. Rather, Minneapolis is only prohibited from denying plaintiff "a reasonable opportunity to open and operate an adult theater within the city." Renton, 475 U.S. at 54, 106 S.Ct. at 932. Holding that section 540.410 meets this requirement, we reverse the decision of the District Court that the ordinance violates plaintiff's First Amendment rights.[6]
 
 IV.
 
 18
 For the reasons set forth in this opinion, we vacate the decision of the District Court that section 540.410 is unconstitutionally vague. The court's alternative holding that the ordinance works as a prior restraint in violation of the First Amendment is reversed.
 
 
 
 *
 The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 The ordinance defines an adults-only bookstore as:
 [a]n establishment having as a substantial or significant portion of its stock in trade, books, magazines, films for sale or viewing on premises by use of motion picture devices or other coin-operated means, and other periodicals which are distinguished or characterized by their principal emphasis on matters depicting, describing or relating to nudity, sexual conduct, sexual excitement or sadomasochistic abuse ... or an establishment with a segment or section devoted to the sale or display of such material, for sale to patrons therein.
 Sec. 540.410(b)(1).
 
 
 [2]
 The ordinance defines an adults-only motion picture theater as "[a]n enclosed building used regularly and routinely for presenting programs, material distinguished or characterized by an emphasis on matter depicting, describing or relating to nudity, sexual conduct, sexual excitement or sadomasochistic abuse ... for observation by patrons therein." Sec. 540.410(b)(2)
 
 
 [3]
 "An establishment having as a substantial or significant portion of its stock in ... films for sale ... which are distinguished or characterized by their [sexually-explicit nature] ... or an establishment with a segment or section devoted to the sale or display of such material, for sale to patrons therein." Sec. 540.410(b)(1)
 
 
 [4]
 We arrive at this figure by simple calculations. According to Plaintiff's Exhibit 14, land zoned B4, B4C, and B4S constitutes at least 13.5% of the city's commercial land; i.e., 375 acres of the 2,784 acres of land in commercial use. Allowing a 90 acre loss for the spacing restrictions caused by triggering uses, 285 acres or 10.2% of the city's commercial land remain for adults-only businesses to legally locate their facilities. Theaters are further restricted from the 3.6% of the land which constitutes the B4 Central Business District. Therefore, 6.6% of the total acreage of commercial land is available for adults-only theaters. See Joint Appendix vol. I, at p. 3
 
 
 [5]
 Our examination of the record, specifically Plaintiff's Exhibit 23, shows at least 120 block faces are potentially available for owners of adult theaters to locate their facilities. This ample opportunity for relocation distinguishes the case here from Alexander's earlier and successful challenge of the Minneapolis Code of Ordinances section 540.410 enacted in 1977. Because the earlier version of the zoning ordinance allowed "at most [only] twelve possible legal sites for relocation," Alexander v. City of Minneapolis, 698 F.2d 936, 938 (8th Cir.1983), we upheld the District Court's finding that Sec. 540.410 would greatly suppress access to adult theaters and was therefore a constitutional violation under the First and Fourteenth Amendments. 698 F.2d at 939
 
 
 [6]
 It is unnecessary for us to consider Alexander's claim that he is denied equal protection under section 540.410. Although raised at the District Court, this issue was not addressed. We decline to do so now except to quote a footnote from Posadas De Puerto Rico Assoc. v. Tourism Co. of Puerto Rico, 478 U.S. 328, 345 n. 9, 106 S.Ct. 2968, 2979 n. 9, 92 L.Ed.2d 266 (1986): "If there is a sufficient 'fit' between the legislature's means and ends to satisfy the concerns of the First Amendment, the same 'fit' is surely adequate under applicable 'rational basis' equal protection analysis."