**AMBASSADOR BOOKS & VIDEO, INC.;**
**Allan Dunlap, doing business as**
**United Arcade, Appellants,**

v.

**CITY OF LITTLE ROCK, ARKANSAS,**
**Defendant–Appellee.**

No. 93–1509.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1993.

Decided April 1, 1994.

John Wesley Hall, Jr., Little Rock, AR, argued, for appellant.

Thomas M. Carpenter, Little Rock, AR, argued, for appellee.

Before HANSEN, Circuit Judge, JOHN R. GIBSON * and FRIEDMAN **, Senior Circuit Judges.

FRIEDMAN, Senior Circuit Judge.

This case involves constitutional challenges to a city ordinance that limits the areas of the city in which "sexually oriented businesses" may operate. The district court held the ordinance constitutional. We affirm.

I

A. In August or September, 1985, the Board of Directors of the City of Little Rock, Arkansas ("City"), received a number of complaints about adult businesses operating within the city. City Manager Fleming sent a memorandum to City Attorney Stodola requesting research on regulating sexually oriented businesses. In response, Stodola asked two members of his staff to prepare an "In depth memo" on the subject. In this internal work assignment Stodola stated in a handwritten comment, "Please get together and draft a legal opinion on this—I want to shut these places down! Somehow."

The research indicated that the city could not legally ban adult businesses, but only could restrict the places they operate. The City Attorney's office then worked with the Department of Neighborhoods and Planning

---

* The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

** DANIEL M. FRIEDMAN, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

to formulate an appropriate method to regulate these businesses.

The Office drafted a land-use, or zoning ordinance patterned on those other cities had adopted to limit the areas where such businesses could operate. In developing the ordinance, the City Attorney studied detailed reports of the actions of a number of other cities. These studies all showed an increase in crime and a decrease in property values in areas where adult business operated—particularly in residential neighborhoods. The City Attorney explained these studies, including the secondary effects of such businesses, to the City Planning Commission and the Board of Directors in connection with their consideration of the proposed ordinance. The City Attorney testified that "the fact that the citizens had complained about the secondary effects on them" was "what initiated this entire process of creating a land use regulation."

After holding public hearings, the city adopted the ordinance here at issue.

The ordinance contained introductory "whereas clauses" describing the secondary effects these businesses have, including the following:

> hearings have determined that these types of businesses ... may have a detrimental effect on the quality of [local] education; and ...
>
> said hearings also elicited information expressing ... the detrimental effects these businesses have on the various uses of the properties mentioned; and
>
> the Board of Directors have determined that the image of the City ... will be adversely affected by the presence of sexually oriented businesses ...; and
>
> the location of sexually oriented businesses ... may lead to increased levels of criminal activity in the vicinity of such sexually oriented businesses; and
>
> merchants in the City have expressed their concern about the adverse impact these types of businesses have on the value of their property and on their retail trade....

Under the caption "Purpose and intent", the ordinance stated:

> It is the purpose of this article to regulate sexually oriented businesses to promote the health, safety and general welfare of the citizens of the city, and to establish reasonable and uniform regulations to prevent the continued concentration of sexually oriented businesses within the city. The provisions of this article have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials, including sexually oriented materials. Similarly, it is not the intent nor effect of this article to restrict or deny access by adults to sexually oriented entertainment to their intended market unless otherwise restricted by law.

§ 17–211.

The ordinance prohibits "sexually oriented businesses" from operating within 750 feet of: (1) religious facilities; (2) public or private elementary, secondary, or post-secondary schools; (3) boundaries of residential zones or any single-family or multiple-family use; (4) public parks; (5) medical facilities; (6) properties on the National Register of Historical Places or local historical districts; or another sexually oriented business § 17–214. "Sexually oriented businesses" are defined to include adult arcades, adult bookstores, adult video stores, adult cabarets, adult motion picture theaters and adult theaters, § 17–212(9), each of which the ordinance further defines. § 17–212.

The City considered, but rejected as overly restrictive, a 1000–foot restriction, even though that restriction had been held constitutional. A 500–foot restriction also was rejected as insufficient to meet the City's concerns about the impact of such businesses on crime and on urban life and development.

The ordinance contains a so-called three-year amortization period, which permits existing sexually oriented businesses to continue for that period and authorizes "a reasonable extension" of that time if "necessary to prevent undue financial hardship." § 17–215(a).

B. The appellants, Ambassador Books & Video, Inc. and United Arcade (collectively "Ambassador"), each operates an adult book

store and adult arcade, which the ordinance prohibits them from operating because they are located within 750 feet of a church or residentially-zoned property. They are within the ordinance definition of "sexually oriented businesses."

At the end of the three-year amortization period, Ambassador continued to operate within locations the ordinance prohibited. After receiving notice that the ordinance would be enforced against it, Ambassador filed this suit in the United States District Court for the Eastern District of Arkansas, to enjoin operation of the ordinance. Ambassador alleged that the ordinance violated the First and Fourteenth Amendments, constituted an inverse condemnation of its businesses, and was a Bill of Attainder.

After a bench trial, the district court[1] held that the ordinance is constitutional. The court held that because the ordinance "does not, on its face, ban sexually oriented businesses altogether," but, instead, "zones them into certain small, scattered sections of the city," the ordinance "is not content based but rather is correctly treated as a form of time, place, and manner regulation." The court ruled that the ordinance "leaves reasonable alternative avenues of communication open for the sexually oriented businesses." Although stating that the "Court is of the opinion that the city's predominant intent was to hinder or alleviate the operation of these adult businesses because of their content and not because of any secondary effects they might have caused," the court held that the ordinance "was designed to serve a substantial governmental interest" and, under the decisions of this court, met the standards of the First Amendment.

Finally, the court held that the ordinance did not constitute a Bill of Attainder because it "is not punitive in nature" and did not constitute inverse condemnation because the three-year amortization period "is a reasonable period of time in which non-conforming businesses can be expected to recoup their investment."

## II.

A. The starting point in our analysis of the First Amendment issues is the Supreme Court's decision in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). There, the Court upheld, as consistent with the First Amendment, a city ordinance that prohibited adult motion picture theaters from locating within 1000 feet of any residential zone, simple- or multiple-dwelling, church, park, or school.

The Court first held that because the ordinance "does not ban adult theaters altogether, but merely provides that such theaters may not be located within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school, [it] is therefore properly analyzed as a form of time, place and manner regulation." *Id.* at 46, 106 S.Ct. at 928. The Court ruled that the ordinance was "content-neutral" because it was "aimed not at the content of the films shown at 'adult motion picture theatres,' but rather at the secondary effects of such theaters on the surrounding community." *Id.* at 47, 106 S.Ct. at 929. The Court stated that in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), "a majority of this Court decided that, at least with respect to businesses that purvey sexually explicit materials, zoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations." *Id.*, 475 U.S. at 49, 106 S.Ct. at 930 (footnote omitted).

The Court ruled that "[t]he appropriate inquiry in this case, then, is whether the Renton ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Id.* at 50, 106 S.Ct. at 930. The Court held that the ordinance met that standard. It quoted with approval the statement of the majority in *American Mini Theatres* that "a city's 'interest in attempting to preserve the quality of urban life is one that

[1] The Honorable Steven M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas.

must be accorded high respect.'" *Id.* The Court ruled that in enacting the ordinance "Renton was entitled to rely on the experiences of Seattle and other cities," *id.* at 51, 106 S.Ct. at 931, and rejected as imposing on the city "an unnecessarily rigid burden of proof" the court of appeals ruling that "because the Renton ordinance was enacted without the benefit of studies specifically relating to 'the particular problems or needs of Renton,' the city's justifications for the ordinance were 'conclusory and speculative.'" *Id.* at 50, 106 S.Ct. at 930.

Finally, the Court held that the ordinance, which left "some 520 acres, or more than five percent of the entire land area of Renton, open to use as adult theater sites," permitted "reasonable alternative avenues of communication." *Id.* at 53, 106 S.Ct. at 932.

Following *Renton,* this court twice has sustained the constitutionality under the First Amendment of municipal ordinances that restricted the areas in which adult businesses could operate. In *Alexander v. City of Minneapolis,* 928 F.2d 278 (1991), the ordinance required adults-only businesses to operate within certain specified areas of the city. Because the ordinance "does not ban adults-only businesses altogether, the District Court ... correctly treated [it] 'as a form of time, place and manner regulation.'" *Id.* at 282. Rejecting the district court's ruling that the standard for determining whether the ordinance provided "reasonable alternative avenues of communication" was "whether reasonable relocation possibilities exist for the protected businesses forced to shut down," we concluded that "numerous sites were potentially available for Alexander to relocate his theaters. Under the ordinance, theaters of this sort have access to at least 6.6% of the total acreage of commercial land ... That Alexander could not secure property meeting his economic or commercial criteria does not render Section 540.410 invalid." *Id.* at 283–4. We therefore held that Section 540.410 did not deny Alexander "a reasonable opportunity to open and operate an adult theater within the city." *Id.* at 284 (quoting *Renton,* 475 U.S. at 54, 106 S.Ct. at 932).

In *Holmberg v. City of Ramsey,* 12 F.3d 140 (1993), the ordinance barred adults-only businesses from operating within 1000 feet of a day care center, a church, a bowling alley that serves liquor, and residential property. This court stated that the case "is largely controlled by *Renton.* Because the City's zoning ordinance limits the location of sexually oriented businesses rather than banning them altogether, the ordinance is analyzed as a form of time, place, and manner regulation of protected speech.... Regulations of this kind withstand First Amendment attack provided the regulations are content-neutral, are designed to serve a substantial governmental interest, and do not unreasonably limit alternative avenues of communication." *Id.* at 142 (citations omitted). The court held that the ordinance was "content-neutral":

> the ordinance's stated purpose is to lessen the undesirable secondary effects sexually oriented businesses have on surrounding neighborhoods, make these businesses less accessible to minors, prevent losses in property values, and reduce criminal activity. Like the district court, we find nothing in the ordinance that suggests the City Council passed the ordinance to suppress the message of Holmberg's sexual materials, rather than to limit the choice of locations for businesses like his. Thus, the ordinance, justified without reference to the content of the regulated speech, is content-neutral.

*Id.* at 143.

The court further held that the city had established that the ordinance served a sufficient governmental interest by "relying on other cities' studies showing that sexually oriented businesses have an adverse impact on surrounding neighborhoods. Because the City reasonably believed the studies were relevant to the problems in Ramsey, the City satisfied its burden." *Id.* Finally, the court ruled that there were available alternative sites to which Holmberg could relocate his business, despite the high cost of such sites. "Because the ordinance provides Holmberg with potential relocation sites in accessible commercially zoned areas, we conclude the ordinance does not unreasonably limit alternative avenues of communication." *Id.* at 144.

**B.** Under these standards, the Little Rock ordinance complies with the First Amendment. The ordinance does not prohibit sexually oriented businesses from operating, but only limits the areas in which they may do so. As the district court and Ambassador recognize, the ordinance is a typical time, place and manner regulation—here place—and is content-neutral. *Renton; Holmberg.*

The fact that the ordinance covers only a particular category of businesses—those that are sexually oriented—does not make it content based. *Id.* Here, as in *Renton,* the ordinance was "aimed not at the content of the" materials Ambassador handled at its book shops and arcades "but rather at the secondary effects of such [businesses] on the surrounding community" 475 U.S. at 47, 106 S.Ct. at 929. Since the ordinance "can be justified without reference to the content of the regulated speech, it can be considered content neutral." *Doe v. City of Minneapolis,* 898 F.2d 612, 617 (8th Cir. 1990) (quoting *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984)).

Relying on the district court's conclusion—which it labels a finding—that on the evidence before it, "the ordinance was enacted not to curb the secondary effects these businesses may cause but rather to suppress otherwise protected speech," Ambassador contends that this conclusion shows that the ordinance was content-based, not content-neutral. Ambassador's contention apparently is that because the City's purpose was to close its bookstores and arcades, the prohibitions of the ordinance necessarily were based upon the contents of the material it handled.

Courts, however, normally do not look behind the legislative findings and policy statements to attempt to discern the hidden (as distinguished from the stated) purpose of the legislation. In *Renton,* the court of appeals had held that if "a motivating factor" in enacting the ordinance was to restrict the theater owner's exercise of First Amendment rights, although its stated purpose was to deal with the secondary effects, the ordinance would be invalid. 475 U.S. at 47, 106 S.Ct. at 929. The Supreme Court rejected this "view of the law," quoting the following statement from *United States v. O'Brien,* 391 U.S. 367, 383–4, 88 S.Ct. 1673, 1682–83, 20 L.Ed.2d 672 (1968):

> It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.
>
> \*   \*   \*   \*   \*   \*
>
> What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.

475 U.S. at 47–48, 106 S.Ct. at 929.

The Court also stated in *O'Brien:* "Inquiries into congressional motives or purposes are a hazardous matter." 391 U.S. at 383, 88 S.Ct. at 1682.

In *Fleming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), the Court said "that only the clearest proof could suffice to establish the unconstitutionality of a statute" on the ground that "a punitive purpose in fact lay behind the statute." *Id.* at 617, 80 S.Ct. at 1376. The Court stated: "Judicial inquiries into Congressional motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed." *Id.*

Although those cases dealt with Acts of Congress, the principle they announced is equally applicable to municipal ordinances.

The evidence on which the district court relied to support its conclusion that the city's true, but hidden, intent in enacting the ordinance was different from what the ordinance itself stated, falls far short of what would suffice to justify disregarding the plain and clear statement of the ordinance's purpose.

First was the handwritten statement by the city attorney, in instructing his staff to prepare a comprehensive opinion on dealing with sexually oriented businesses, that he "want[ed] to shut these places down! Somehow." This was the personal objective of the city attorney, who was not a member of the body that adopted the ordinance, and after he was informed that this could not be done,

he changed his approach to the problem in favor of limiting the areas in which the businesses could operate. The City Attorney testified that in the ordinance he was "in no way, shape, form or fashion . . . attempting to" "put these people and these sorts of businesses out of business." "We knew that the law didn't allow that."

■ Second was that in 1988 the city had a list of seven establishments, all of which would have had to relocate under the ordinance as enacted. This list does not indicate an improper motive by the city, but reflects the research the city did in considering potential problems or secondary effects.

Third was that the vice squad distributed copies of the ordinance to business owners one month before the expiration of the three-year grace period. This action does not even suggest that the city adopted the ordinance in an attempt to put these entities out of business.

Finally was the absence of any explicit evidence of actual secondary effects these businesses had. That does not show an improper purpose by the city. As noted, the city studied the problem because of complaints and concerns it had received from citizens about the sexually oriented businesses. Moreover, *Renton* recognized that in adopting such an ordinance, a city "was entitled to rely on the experiences of . . . other cities," 475 U.S. at 51, 106 S.Ct. at 931—as Little Rock did here. This court has rejected the argument that adult business ordinances must be founded upon local experience. *Postscript Enterprises v. City of Bridgeton,* 905 F.2d 223, 226–27 (8th Cir. 1990) ("To insist that governmental interests justifying such legislation could only be found in specific local experiences and conditions would be unrealistically to require deliberate subjection to those experiences and conditions before attempting to avoid them").

Since the ordinance is a content-neutral time, place and manner regulation, the "appropriate inquiry in this case, then, is whether [it] is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton,* 475 U.S. at 50, 106 S.Ct. at 930.

The Little Rock ordinance satisfies both of these requirements.

■ 1. The "whereas" clauses of the ordinance set forth the various adverse secondary effects these sexually oriented businesses had on the City. The stated purpose of the ordinance is

... to promote the health, safety and general welfare of the citizens of the city, and to establish reasonable and uniform regulations to prevent the continued concentration of sexually oriented businesses within the city. The provisions of this article have neither the purpose nor effect of imposing a limitation or restriction on the content of any materials.

This is a substantial government interest. "[A] City's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.'" *Renton,* 475 U.S. at 50, 106 S.Ct. at 930 (quoting from plurality opinion in *American Mini Theatres,* 427 U.S. at 71, 96 S.Ct. at 2452). *See also Alexander,* 928 F.2d at 282–3; *Holmberg,* 12 F.3d at 143. The district court here recognized that "on its face, the ordinance declares its purpose to be the amelioration of secondary effects."

In sum, as the district court stated, the Little Rock ordinance "was designed to serve a substantial governmental interest."

■ 2. The remaining issue is whether the ordinance permits reasonable alternative avenues of communication. We agree with the district court that it does.

The district court found—and the findings are not clearly erroneous—that 6.75 percent of the areas in which these businesses could locate was available under the ordinance and that there were 97 available relocation sites. This percentage is comparable to the "more than five percent" in *Renton* and the 6.6 percent in *Alexander,* which were held to provide reasonable alternative avenues of communication. Indeed, the appellant United Arcade applied for and received a conditional use permit to relocate to one of those areas. Although Ambassador argues that the cost of relocation to all or many of those areas would prevent relocation, the cost factor is unimportant in determining whether

the ordinance satisfies the standards of the First Amendment. *Renton; Alexander.*

## III

■ Ambassador contends that the application of the ordinance to its existing businesses denies it due process in violation of the Fourteenth Amendment, and also violated its First Amendment rights. It argues that such ordinances "can only be prospective in application," but cites no authority for that conclusion.

■ The Little Rock ordinance does not prohibit the operation of Ambassador's adult book shops and arcades, but only limits the areas where they may operate. Although Ambassador is entitled to protection against arbitrary government action toward its business, it has no absolute right to continue to operate that business at the same location. A zoning ordinance restricting possible uses of land will be upheld unless it is arbitrary and unreasonable and has no substantial relation to the public health, safety, or general welfare. *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); *Zahn v. Bd. of Public Works,* 274 U.S. 325, 328, 47 S.Ct. 594, 595, 71 L.Ed. 1074 (1927).

Our holding in Part II that the Little Rock ordinance is designed to serve a substantial governmental interest and permits reasonable alternative avenues of communication also answers Ambassador's due process claim and its claim that the First Amendment bars application of the ordinance to its existing business. The application of the ordinance to Ambassador was not arbitrary or capricious. Moreover, the three-year amortization period, which could be extended, reflected "the City's efforts to allow these business owners to amortize their investment over a three-year-period in their current location." The validity of a three-year amortization period was upheld in *Dumas v. City of Dallas,* 648 F.Supp. 1061, 1071 (N.D.Tex.1986), *aff'd,* 837 F.2d 1298 (5th Cir.1988), *aff'd in part and vacated in part,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

In *Alexander,* we upheld the application of the ordinance there to existing businesses. That ordinance applied to—and its validity was litigated by—existing businesses. Contrary to Ambassador's contention, the issue was litigated in *Alexander. See also Holmberg,* 12 F.3d at 141 (upholding a similar restrictive ordinance which required a preexisting establishment to relocate).

## IV

■ Finally, Ambassador alleges that the Ordinance is a bill of attainder, in violation of Article I, Section 10. In *O'Brien,* 391 U.S. at 383 n. 30, 88 S.Ct. at 1683 n. 30, the Supreme Court noted:

> This Court's decisions have defined a bill of attainder as a legislative Act which inflicts punishment on named individuals or members of an easily ascertainable group without a judicial trial. In determining whether a particular statute is a bill of attainder, the analysis necessarily requires an inquiry into whether the three definitional elements—specificity in identification, punishment, and lack of a judicial trial—are contained in the statute.

Applying this standard, the district court correctly rejected Ambassador's bill of attainder argument, because the ordinance "is not punitive in nature." The restrictions in the ordinance on the areas in which sexually oriented businesses may operate were imposed not to punish the operators of those businesses for their past conduct, but to protect the citizens from the adverse secondary effects those businesses have on the quality of life in the areas where they operate. Since the Little Rock ordinance reasonably furthers nonpunitive legislative purposes, *see Nixon v. Adm. of Gen. Serv.,* 433 U.S. 425, 473, 475–76, 97 S.Ct. 2777, 2806–07, 53 L.Ed.2d 867 (1977), it is not a bill of attainder. *Accord Crain v. City of Mountain Home,* 611 F.2d 726, 729 (8th Cir.1979).

The order of the district court dismissing the complaint (and denying a preliminary injunction) is affirmed.