Linda **DERUSSO** d/b/a Sinsations, Plaintiff,

v.

**CITY OF ALBANY, NEW YORK, Defendant.**

No. 1:01–CV–699(FJS/RFT).

United States District Court, N.D. New York.

June 4, 2002.

Office of David Brickman, David Brickman, of counsel, Albany, NY, for Plaintiff.

City of Albany Office of Corporation Counsel, City Hall, Timothy E. Austin, of counsel, Albany, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

Plaintiff commenced this action on May 14, 2001, pursuant to 42 U.S.C. § 1983, asserting that the City of Albany ("the City" or "Defendant") had violated her rights under the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution through the enactment of Ordinance 23.91.99 which amended § 375 of the City's Zoning Law. She seeks substantial compensatory damages, an order declaring Sections 375–7 and 375–101 unconstitutional on their face and as applied to her, an order enjoining the City from enforcing and implementing all of the laws, statutes, and/or ordinances complained of in her complaint and reasonable attorneys' fees and costs.

Presently before the Court is Plaintiff's motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. The Court heard oral argument in support of, and in opposition to, this motion on July 16, 2001, and reserved decision at that time. At Plaintiff's request, the Court permitted the parties to submit additional briefing on the issue of whether § 375–101 provides for a constitutionally sufficient number of alternative locations for adult entertainment establishments within the City. The following constitutes the Court's decision with respect to the pending motion.

## II. BACKGROUND

Plaintiff is the owner of Sinsations, an all-nude dance establishment, located at 720 Central Avenue in Albany, New York. Plaintiff has occupied this location since

1983. She contends that the City's Zoning Law, in particular § 375–101, unconstitutionally limits the location of adult entertainment establishments to such a small area that the City has effectively denied such establishments a reasonable opportunity to operate in the City. In other words, Plaintiff asserts that § 375–101, as amended by Ordinance 23.91.99 ("the 1999 Amendments"), does not provide for a constitutionally sufficient number of receptor sites for adult entertainment establishments within the City.

Plaintiff also contends that the City's Zoning Law is a prior restraint because it effectively bans the adult entertainment business in the entire City and, therefore, violates the First Amendment. *See* Plaintiff's Memorandum of Law at 8. Furthermore, Plaintiff claims that § 375–101 is an unconstitutional taking of property. *See id.* at 9. Finally, Plaintiff asserts that § 375–7's inclusion of the term "go-go dancers" within its definition of adult entertainment is unconstitutionally vague and over-broad because it "categorically eliminate[s] all manner of dance without regard to character." *See id.* at 12.

### III. DISCUSSION

#### A. Preliminary injunction standard

Plaintiff moves for a preliminary injunction on the ground that § 375–101 and § 375–7 are unconstitutional. To prevail on this motion, Plaintiff must demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (citations omitted); *Nakatomi Invs., Inc. v. City of Schenectady,* 949 F.Supp. 988, 990 (N.D.N.Y.

1997). However, where a party seeks to stay a governmental action or regulatory scheme, the Second Circuit has held that the more rigorous "likelihood of success" standard applies. *See Plaza Health Labs., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir. 1989) (citations omitted).

The City does not dispute that it intends to enforce its ordinance against Plaintiff and, thus, concedes that irreparable harm has been established by virtue of the Second Circuit's holding that " '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' " *Paulsen v. County of Nassau,* 925 F.2d 65, 68 (2d Cir.1991) (quoting *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976)); *Nakatomi Invs., Inc.,* 949 F.Supp. at 991 (quotation and citation omitted). Thus, the sole remaining question is whether Plaintiff has established that she is likely to succeed on the merits of her claim that the ordinance infringes upon protected speech.

#### B. Section 375–101

■ Although § 375–101 restricts adult entertainment establishments to the City's M–1 Zoning Districts, such establishments are entitled to locate in those districts as of right subject to the following regulations: (1) they must be located at least 1,000 feet from a church or other place of religious worship, a school, a residential zoning district, a park, playground, or playing field; (2) they must be located at least 1,000 feet from another adult entertainment establishment; (3) no more than one adult entertainment establishment may be located on a zoning lot; and (4) they shall not exceed in total 10,000 square feet of floor area and cellar space not used for enclosed storage or mechanical equipment. *See* Section 375–101. Since § 375–101 does not ban adult entertainment busi-

nesses altogether, but merely restricts their location, it is therefore properly analyzed as a time, place, and manner regulation. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (citation omitted). According to *Renton*, time, place and manner regulations are constitutional only if they (1) are content neutral, (2) designed to serve a substantial governmental interest, and (3) do not unreasonably limit alternative avenues of expression. *See id.* at 46–54, 106 S.Ct. 925.

■ Therefore, the Court must first determine whether § 375–101 is content neutral or content based. If it is content based, then it is presumptively in violation of the First Amendment. *See Carey v. Brown*, 447 U.S. 455, 462–63 & n. 7, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). However, if § 375–101 is content neutral, it will be found constitutional so long as it is "designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50, 106 S.Ct. 925 (citations omitted).

The City argues that § 375–101 is content neutral because its aim

is the prevention of the negative 'secondary effects' associated with adult entertainment establishments ('the reduction in surrounding property values, the proliferation of crime and the effects of crime, and the deterioration of the historic and scenic qualities of the City of Albany, in the vicinity of residential zoning districts, churches or other places of worship, schools, parks, playgrounds and playing fields, and to reduce the possible incidents of such secondary effects in the areas where adult entertainment establishments are allowed to exist').

*See* Defendant's Memorandum of Law at 4 (citing Exhibit A to Austin Affirmation).

■ Based upon Defendant's assertions as to the purposes of § 375–101, to which Plaintiff does not take issue, the Court concludes that § 375–101 is a content neutral regulation because it is not aimed at the content of Plaintiff's expression but only the negative secondary effects associated with that expression. *See O'Malley v. City of Syracuse*, 813 F.Supp. 133, 145 (N.D.N.Y.1993) (citations omitted).

The next question is whether § 375–101 serves a substantial governmental interest. As noted above, the stated purpose of § 375–101 is "the prevention of the negative 'secondary effects' associated with adult entertainment establishments." *See* Defendant's Memorandum of Law at 4 (citing Exhibit A to Austin Affirmation). Many courts have held that a municipality has a governmental interest in "preserving the quality of urban life," "preventing urban blight," and "advancing esthetic values" of a particular area. *See, e.g., Renton*, 475 U.S. at 50, 106 S.Ct. 925; *O'Malley*, 813 F.Supp. at 146 (citations omitted).

The City was also entitled to rely upon the experiences of other cities in enacting § 375–101. As the *Renton* Court stated, "[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton*, 475 U.S. at 51–52, 106 S.Ct. 925. In addition, a municipality need not experience the same exact negative effects as the municipality upon which it bases its research. *See Ambassador Books & Video, Inc. v. City of Little Rock*, 20 F.3d 858, 864 (8th Cir.1994). The City is only required to demonstrate that it had a reasonable belief that the studies upon which it relied in enacting § 375–101 were relevant to the problem it was addressing.

*See Renton,* 475 U.S. at 51–52, 106 S.Ct. 925. As this Court stated in *O'Malley,*

> The City need not make an independent finding that establishments that feature strippers will have harmful secondary effects on the surrounding neighborhoods. The fact that the City relied upon the experiences of other municipalities satisfies the requirement that the statute not be based upon conclusory or speculative evidence.... To that end, it is significant that the Supreme Court has noted on several occasions that "adult entertainment businesses" generally cause the harmful secondary effects that the City seeks to avoid ...

*O'Malley,* 813 F.Supp. at 146 (internal citations and other citations omitted); *see also Tri–State Video Corp. v. Town of Stephentown,* No. 97–CV–965, 1998 WL 72331, *7 (N.D.N.Y. Feb.13, 1998) (quoting *O'Malley,* 813 F.Supp. at 146).

■ In the present case, there is no evidence that the City did not reasonably believe that the studies of the municipalities upon which it relied in enacting § 375–101 were relevant to its potential problems.[1] Therefore, the Court concludes that § 375–101 was properly enacted based upon relevant outside studies and was designed to serve a substantial governmental interest.

The Supreme Court has also held that not only must the regulation be designed to serve a substantial governmental interest, but it also must be narrowly tailored to serve that interest. *See Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). In *Ward,* the Supreme Court stated that a regulation is not narrowly tailored if it "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Id.* at 799, 109 S.Ct. 2746. However, it need not be the "least restrictive means" of accomplishing the purpose of the governmental regulation. *See id.* at 798, 109 S.Ct. 2746. This requirement is satisfied " 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.' " *Id.* at 799, 109 S.Ct. 2746 (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985)) (other citation omitted). Thus, the Court's earlier finding that § 375–101 serves a substantial government interest closely relates to this concern. In the present case, § 375–101 is narrowly tailored because it only seeks to regulate and control the negative secondary effects necessary to accomplish its purpose. For example, the specific 1,000–foot buffer zones are sufficiently particularized and were patterned

1. Specifically, the Common Council noted that it had "reviewed and considered a number of studies of other municipalities and municipal agencies which analyze the effects associated with adult entertainment establishments on the neighborhoods in which such establishments have existed, including the New York City Department of City Planning's Adult Entertainment Study; the Study & Recommendations for Adult Entertainment Businesses in the Town of Islip, New York; the Chelsea Business Survey; and the Times Square Business Improvement District Adult Entertainment Study[.]" *See* Affirmation of Timothy E. Austin, dated July 1, 2001 ("Austin Aff."), at Exhibit A.

In Plaintiff's supplemental submissions, which the Court had limited to a discussion of whether § 375–101 provided sufficient alternative locations for adult entertainment establishments, Plaintiff's expert, R. Bruce McLaughlin, takes issue with the manner in which the studies upon which the City relied in enacting § 375–101 were conducted. *See* Affidavit of R. Bruce McLaughlin, sworn to August 10, 2001, at ¶¶ 87–98. However, whether or not these studies were flawed is not relevant to the issue of whether the City reasonably believed that these studies were relevant to its problems.

after other similar ordinances that have been found constitutional. Thus, the Court concludes that § 375–101 is narrowly tailored to serve its substantial governmental interests.

Finally, *Renton* also requires that § 375–101 provide for reasonable alternative avenues of communication.[2] *See Renton,* 475 U.S. at 46–47, 106 S.Ct. 925. As the Supreme Court has stated, "the First Amendment requires only that [a municipality] refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city, ..." *Id.* at 54, 106 S.Ct. 925. A reasonable opportunity does not include a concern for economic considerations. *See id.*

In the present case, the City asserts that § 375–101 allows adult entertainment businesses to operate as of right in approximately 10% of the City's total land area. *See* Affidavit of Richard Nicholson, dated August 24, 2001, at ¶ 5.[3] Moreover, Mr. Nicholson asserts that within that area, thirteen potential sites exist on which adult entertainment establishments could be located. *See id.* at ¶ 6.

Plaintiff disagrees with the City's assessment of the potential number of alternative sites available for adult entertainment establishments. According to

Plaintiff's expert, Mr. R. Bruce McLaughlin, the City's M–1 Zoning Districts yield somewhere between zero and six potential sites for adult entertainment establishments to locate, depending upon the restrictions placed upon those sites. *See* Affidavit of R. Bruce McLaughlin, sworn to August 10, 2001, at ¶ 79. Moreover, he asserts that "[a]t six sites, the ratio [of sites to population] would be one site for every 16,967 person[s]." *See id.* at ¶ 83.[4] Mr. McLaughlin opines that this ratio is "as a matter of fact, woefully inadequate for the provision of alternative avenues of communication for sexually oriented Adult Uses." *See id.* at ¶ 84.[5]

The Court, at least for purposes of this analysis, finds that the M–1 Zoning Districts provide a sufficient "reasonable opportunity [for adult entertainment establishments] to open and operate[.]" *See Renton,* 475 U.S. at 54, 106 S.Ct. 925 (approximately 5% of entire land area of city available); *Ambassador Books & Video, Inc.,* 20 F.3d at 864 (6.75% of the area in which to locate available); *Alexander v. City of Minneapolis,* 928 F.2d 278, 283 (8th Cir.1991) (6.6% of total acreage of commercial land); *O'Malley,* 813 F.Supp. at 146–47 (4% of entire land area of city available). Although there is an issue of fact about the number of potential sites

**2.** This is the only part of the *Renton* test that Plaintiff specifically addresses in support of her motion for a preliminary injunction.

**3.** Mr. Nicholson is the City's Historic Preservation Planner.

**4.** In paragraph 83, Mr. McLaughlin also states that "[a]t six sites, the ratio of sites to population would be one site for every 12,725 persons." *See* McLaughlin Aff. at ¶ 83. However, using the population figure that Mr. McLaughlin uses, 101,802, it is clear that the correct ratio is one site for every 16,967 persons.

**5.** Mr. McLaughlin bases his statement that this ratio is "woefully inadequate" upon a list of "cases ... that quantify, precisely or relatively precisely, the actual number of sites available in a jurisdiction as alternative avenues of communication for Adult Uses." *See* McLaughlin Aff. at Exhibit M at 3. However, in the notes which are attached to this list, Mr. McLaughlin acknowledges that "this list does not include cases ... resolved only at the Preliminary Injunction stage, where a different outcome could be expected after a trial[.]" *See id.* at Exhibit M at 3. Finally, it is interesting to note that none of these cases, other than one involving New York City, relate to municipalities within the Second Circuit.

that are actually available for adult entertainment establishments to locate within the M–1 Zoning Districts, the Court finds that Plaintiff has failed to demonstrate that even if there are only six available sites for such establishments to locate she is likely to succeed on the merits of her claim that § 375–101 fails to provide sufficient alternative avenues of communication as *Renton* requires.

In sum, because the Court finds that § 375–101 is content neutral, serves a substantial governmental interest, is narrowly tailored to serve that interest, and Plaintiff has not demonstrated that she is likely to succeed on the merits of her claim that § 375–101 does not provide for reasonable alternative avenues of communication, the Court denies her motion for a preliminary injunction.

Although not necessary to its decision, the Court will briefly address two other arguments that Plaintiff raises with respect to the constitutionality of § 375–101:(1) that it constitutes a prior restraint and (2) that it constitutes a taking.

### 1. Plaintiff's claim that § 375–101 constitutes a prior restraint

Plaintiff asserts that § 375–101, as amended by the 1999 Amendments, is a prior restraint because it effectively bans adult entertainment establishments in the entire City. *See* Plaintiff's Memorandum of Law at 8. Aside from the fact that Plaintiff has come forward with no evidence to support this contention, Plaintiff also misunderstands the application and meaning of a "prior restraint." The issue of prior restraints arises in the context of licensing schemes affecting First Amendment expression. "[A] permit scheme qualifies as a prior restraint because it essentially requires the permittee to obtain the government's permission or approval before engaging in an act of First

Amendment protected speech." *Nakatomi Invs., Inc.*, 949 F.Supp. at 1002 (citation omitted).

■ In the present case, there is no permitting requirement. To the contrary, § 375–101 permits adult entertainment establishments to operate in the M–1 Zoning Districts as of right, with no requirement that a license or permit be issued prior to opening. Thus, there is no danger of conferring upon City officials the "unrestrained discretion" that renders a prior restraint unconstitutional. *See id.* ("A system that endows a government official with unbridled discretion to determine who may speak and who may not, implicitly vests that governmental official with the power to regulate speech on the basis of its content and/or the viewpoint of the speaker." (citation omitted)).

Since Plaintiff has not shown that there is any legal basis for her claim that § 375–101 constitutes a prior restraint, the Court concludes that she is not likely to succeed on the merits of this claim. Accordingly, the Court denies Plaintiff's motion for a preliminary injunction to the extent that it is based upon this argument.

### 2. Plaintiff's takings clause claim

In her memorandum of law, Plaintiff asserts that "Chapter 375–101 is an unconstitutional 'taking' of property." *See* Plaintiff's Memorandum of Law at 9. She does not explain the basis for this claim or how § 375–101 constitutes a taking. Assuming that Plaintiff is referring to those provisions of § 375–101 concerning termination of non-conforming uses, Plaintiff's claim must fail.

In *Stringfellow's of N.Y., Ltd. v. City of N.Y.*, 91 N.Y.2d 382, 671 N.Y.S.2d 406, 694 N.E.2d 407 (1998), the New York Court of Appeals addressed this issue with respect to an ordinance that was very similar to

§ 375–101 in terms of its requirements for termination of non-conforming uses. The plaintiffs in *Stringfellow's* argued that the ordinance constituted a taking because much of the substantial investments they had made in their businesses would be lost if they were required to relocate. They also contended that the one-year amortization provision in the ordinance was too short to give them an opportunity to recoup their investments. *See id.* at 405, 671 N.Y.S.2d 406, 694 N.E.2d 407. The court rejected these arguments "because they fail[ed] to take into account the effect of the statutory provisions for hardship extensions." *Id.* Under the provisions of the ordinance at issue in *Stringfellow's,* a nonconforming establishment could apply to the Board of Standards and Appeals for permission to continue to operate beyond the one-year amortization period, where it could show that it had made substantial expenditures related to the nonconformity, that such expenditures could not be recouped within a year, and that the requested extension was the minimum necessary to permit such recoupment. *See id.* The court concluded that "[h]aving failed to seek relief under this provision, plaintiffs are not now in a position to complain that their constitutional due process rights have been violated." *Id.* (citations omitted).

■ In the present case, § 375–101 provides for a similar amortization schedule and a procedure for extending the amortization period. Section 375–101(B) provides that "[a] non-conforming adult entertainment establishment shall terminate within one year of the effective date of this section." Section 375–101(B). However, the Board of Zoning Appeals may extend the one-year period for a limited period of time if (1) the owner of such an establishment applies to the Board of Zoning Appeals at least 120 days before the date on which the establishment must terminate;

(2) the Board finds that the applicant has made substantial financial expenditures related to the non-conformity; (3) the applicant has not recovered substantially all of the financial expenditures related to the non-conformity; and (4) the period for which the establishment may be permitted to continue is the minimum period sufficient for the applicant to recover substantially all of the financial expenditures incurred related to the non-conformity. *See id.* As did the plaintiffs in *Stringfellow's,* Plaintiff has failed to seek relief from the amortization period. Therefore, Plaintiff is not likely to succeed on the merits of her claim that her due process rights have been violated. Accordingly, the Court denies Plaintiff's motion for a preliminary injunction based upon this argument.

## C. Section 375–7

Plaintiff also contends that § 375–7 is unconstitutional because it includes the term "go-go dancers" in its definition of "adult cabaret." This section defines "adult cabaret" as

(a) an establishment devoted to adult entertainment either with or without a liquor license, presenting material distinguished or characterized by its emphasis on matter depicting, describing or relating to sexual activities or anatomical genital areas.

(b) A cabaret that features topless dancers, go-go dancers, strippers, male or female impersonators or similar entertainers for observation by patrons.

Section 375–7.

■ Plaintiff claims that this definition, in effect, "categorically eliminate[s] all manner of dance without regard to its character." *See* Plaintiff's Memorandum of Law at 12. Plaintiff's interpretation of § 375–7 is only plausible if the term "go-go dancers" is taken out of context. The Court, however, "may not consider this

term in a vacuum. Instead, a term must be interpreted in the context in which it appears in the ordinance, ..., and the ordinance as a whole must be 'construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless.' " *O'Malley*, 813 F.Supp. at 144 (internal citations and other quotation and citation omitted). When considered in the context of § 375–7 as a whole, the term "go-go dancers" takes on a clear, independent meaning: the "go-go dancers" referred to in § 375–7 are those dancers who entertain in "an establishment devoted to adult entertainment ... characterized by its emphasis on matter depicting, describing or relating to sexual activities or anatomical genital areas." Section 375–7. When read in this context, the term "go-go dancers" clearly does not, as Plaintiff contends, "eliminate all manner of dance without regard to character."[6] Therefore, the Court concludes that Plaintiff is not likely to succeed on the merits of her claim that § 375–7 is unconstitutional. Accordingly, the Court denies Plaintiff's motion for a preliminary injunction with respect to § 375–7.

### IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's motion for a preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**

---

6. As the City notes, because Plaintiff operates an all-nude dancing establishment, it would be difficult, if not impossible, for Plaintiff to establish that this definition is unconstitutional as applied to her place of business.