Margaret P. GILLEO, Plaintiff–Appellee,

v.

CITY OF LADUE; Edith J. Spink, Mayor of the City of Ladue; Thomas R. Remington, as member of the City Council of the City of Ladue; George L. Hensley, as member of the City Council of the City of Ladue; Gale S. Johnston, Jr., as member of the City Council of the City of Ladue; Robert A. Wood, as member of the City Council of the City of Ladue; Robert D. Mudd, as member of the City Council of the City of Ladue; George Fonyo. as member of the City Council of the City of Ladue, Defendants–Appellants.

Nos. 92–2232, 92–2235.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1993.

Decided Feb. 22, 1993.

Jordan Cherrick, St. Louis, MO, argued (Jay Summerville, on the brief), for defendants-appellants.

Gerald P. Greiman, St. Louis, MO, argued (Martin Green and Mitchell Margo, on the brief), for plaintiff-appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, FLOYD R. GIBSON and REAVLEY,* Senior Circuit Judges.

REAVLEY, Senior Circuit Judge.

The district court concluded that the City of Ladue's sign ordinance is unconstitutional and permanently enjoined Ladue from enforcing it, 774 F.Supp. 1564. We affirm the court's injunction, but modify the court's award of attorneys' fees, 791 F.Supp. 238.

I. BACKGROUND

Ladue enacted an ordinance that prohibits most signs within the city (the ordinance).[1] Ladue City Ordinance Chapter 35. The ordinance enumerates specific exceptions to the general prohibition.[2] Ladue's

---

* The HONORABLE THOMAS M. REAVLEY, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. The ordinance defines the term "sign" to include banners, pennants, insignia, bulletin boards, ground signs, billboards, poster billboards, illuminated signs, projecting signs, temporary signs, marquees, roof signs, yard signs, electric signs, wall signs, and window signs. According to Ladue's reply brief, the ordinance does not prohibit "rectangular or square shaped flags."

2. The following signs are permitted: municipal signs; subdivision signs; residence identification signs; road signs and driveway signs for danger, direction, or identification; health inspection signs; church, religious institution, and school signs announcing names, services, activities, or functions (limited by number); identification signs for nonprofit organizations; signs identifying the location of public transportation stops; ground signs advertising the sale or rental of real property (one per property); commercial signs in districts zoned for commercial or

stated reasons for its ordinance are: (1) to preserve the natural beauty of the community; (2) to protect the safety of residents; and (3) to maintain the value of real estate. Chapter 35, Article I ("Declaration of Findings, Policies, Interests, and Purposes").

Margaret P. Gilleo placed an $11 \times 8.5$ inch sign stating "For Peace in the Gulf" in the front window of her home. Gilleo was informed that her sign violated Ladue's ordinance. She filed a complaint in federal district court asserting that the ordinance violates her First Amendment right to freedom of speech. Ladue filed a counterclaim for a declaratory judgment that its ordinance is constitutional. Both parties filed motions for summary judgment. The district court entered summary judgment in favor of Gilleo, declaring the ordinance unconstitutional. The court permanently enjoined Ladue from enforcing portions of its ordinance and awarded Gilleo $74,813.25 in attorneys' fees. On appeal, Ladue challenges both the injunction and the fee award.

## II. DISCUSSION

### A. CONTENT–BASED RESTRICTIONS

Our method of analyzing the constitutionality of Ladue's ordinance depends on whether the ordinance is "content-neutral" or "content-based."

In classifying the ordinance as content-neutral or content-based, we are guided by the Supreme Court's plurality opinion in *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). San Diego, in an effort to improve both the safety and the appearance of the city, enacted an ordinance prohibiting billboards in the city. The billboard ordinance excepted on-site billboards identifying the owner or occupant of the premises or advertising goods or services available on the property. Additionally, the billboard ordinance excepted various types of noncommercial signs.[3] In holding San Diego's billboard ordinance unconstitutional, the plurality articulated two concerns. First, by permitting on-site commercial billboards but banning on-site noncommercial billboards, the billboard ordinance favored commercial speech over noncommercial speech. *Id.* at 513, 101 S.Ct. at 2895. Second, by excepting some types of noncommercial speech from the general ban, the city was improperly choosing the appropriate subjects for public debate. *Id.* at 514–15, 101 S.Ct. at 2896. The plurality identified San Diego's billboard ordinance as a content-based regulation.

Ladue's ordinance raises the same concerns. The ordinance favors commercial speech over noncommercial speech,[4] and it favors certain types of noncommercial speech over others. Following the plurality in *Metromedia,* we conclude that Ladue's ordinance is a "content-based" regulation.[5] *See National Advertising Co. v. Town of Niagara,* 942 F.2d 145, 147 (2d Cir.1991) (following *Metromedia*); *National Advertising Co. v. City of Orange,* 861 F.2d 246, 248–49 (9th Cir.1988) (same); *Matthews v. Town of Needham,* 764 F.2d 58, 60 (1st Cir.1985) (same). However, because of the Supreme Court's writing since

industrial use (limited by number); and signs identifying safety hazards.

**3.** The noncommercial signs excepted were: government signs; signs located at public bus stops; signs manufactured, transported, or stored within the city, if not used for advertising purposes; commemorative historical plaques; religious symbols; signs within shopping malls; "for sale" and "for lease" signs; signs on public and commercial vehicles; signs depicting time, temperature, and news; approved temporary, off-premises, subdivision directional signs; and temporary political campaign signs.

**4.** For example, the ordinance permits commercial signs in districts zoned for commercial or industrial use, but it prohibits most noncommercial signs in those districts.

**5.** We recognize that the ordinance is viewpoint neutral. But viewpoint neutrality does not render the statute content-neutral. *Burson v. Freeman,* — U.S. —, —, 112 S.Ct. 1846, 1850, 119 L.Ed.2d 5 (1992); *Boos v. Barry,* 485 U.S. 312, 319, 108 S.Ct. 1157, 1163, 99 L.Ed.2d 333 (1988). "The First Amendment's hostility to content-based regulations extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980).

*Metromedia,* we should address Ladue's argument concerning the "secondary effects" doctrine.

## B. "SECONDARY EFFECTS" DOCTRINE

 Under the secondary effects doctrine, a seemingly content-based regulation is analyzed as a content-neutral regulation if the government shows that the regulation is justified by a desire to eliminate a "secondary effect"—an undesirable effect unrelated to the content or communicative impact of the speech. *See City of Renton v. Playtime Theaters, Inc.,* 475 U.S. 41, 47–49, 106 S.Ct. 925, 929–30, 89 L.Ed.2d 29 (1986) (articulating a "secondary effects" test for distinguishing content-based from content-neutral regulations). As stated in *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989), "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ladue asserts that its ordinance is aimed only at preventing the adverse secondary effects caused by an over-abundance of signs in the community. The secondary effects identified by Ladue include visual blight, unsafe conditions, and decreased property values.

Assuming *arguendo* that the "secondary effects" doctrine extends to cases involving the prohibition of political signs on private property,[6] Ladue fails at sufficiently supporting its secondary-effects argument. Specifically, Ladue has not shown that the prohibited signs cause more aesthetic, safety, and property value problems than the permitted signs. Stated in other words, the prohibited signs are no more associated with the particular "secondary effects" than many of the permitted signs.[7] *Compare Renton,* 475 U.S. at 51–53, 106 S.Ct. at 931–32 (ordinance was aimed at the particular secondary effects that surround theaters featuring sexually explicit films). Ladue has "singled out" certain categories of signs for discriminatory treatment. The fact that the ordinance's differential treatment does not correlate with Ladue's interest in eliminating the secondary effects undermines Ladue's commitment to its secondary-effects justification and supports the contention that the ordinance is aimed at the content of the signs. *Compare id.* (concluding that Renton had not "singled out" adult theaters for discriminatory treatment and that there was no evidence of under-inclusiveness). In short, the ordinance's sign exceptions, many of which cause the same secondary effects as the prohibited signs, renders the secondary effects doctrine inapposite to this case.

## C. CONSTITUTIONALITY OF THE CONTENT–BASED RESTRICTION

 Content-based restrictions are subject to strict scrutiny. To survive strict scrutiny, content-based restrictions must be necessary to serve a compelling interest and must be narrowly drawn to achieve that end. *Simon & Schuster, Inc. v. New York Crime Victims Bd.,* —— U.S. ——, ——, 112 S.Ct. 501, 509, 116 L.Ed.2d 476 (1991). While Ladue's interests in enacting its ordinance are substantial, *see Members of the City Council of Los Angeles v.*

**6.** We have some doubt as to Ladue's argument that the Supreme Court's adoption of the "secondary effects" doctrine has affected the precedential value of the Court's plurality decision in *Metromedia.*

**7.** Ladue asserts that its ordinance prohibits signs that tend to proliferate. According to Ladue, the ordinance excepts from the general ban only signs that are naturally limited in number or that are necessary to protect the safety of Ladue's residents. Ladue, however, has failed to provide sufficient factual support for this proliferation rationale. For example, Ladue's proliferation rationale might explain why the ordinance limits the number of signs that a commercial business, a church, or a school may erect, but it does not explain why the ordinance additionally restricts the content of those signs. (Under the ordinance, commercial businesses may only erect a limited number of *commercial* signs, and schools and churches may only erect a limited number of *announcement* signs.) *Cf. Metromedia,* 453 U.S. at 513, 101 S.Ct. at 2895 (noting that San Diego did "not explain how or why noncommercial billboards located in places where commercial billboards are permitted would be more threatening to safe driving or would detract more from the beauty of the city").

*Taxpayers for Vincent*, 466 U.S. 789, 806–07, 104 S.Ct. 2118, 2129–30, 80 L.Ed.2d 772 (1984), the interests are not sufficiently "compelling" to support a content-based restriction. With respect to the "narrowly-drawn" requirement, the content-based restriction must be the least restrictive alternative available. *See Ward*, 491 U.S. at 798 n. 6, 109 S.Ct. at 2758 n. 6. (explaining that the "narrowly-tailored" test differs according to whether the restriction is content-based or content-neutral). We have no trouble concluding that Ladue's ordinance is not the least restrictive alternative. Therefore, we affirm the district court's holding that Ladue's ordinance is unconstitutional.

We also conclude that the district court did not err in refusing to instate Ladue's back-up plan, which provides that all signs not specifically restricted by other parts of the ordinance must be no greater than six square feet. Neither side argued the constitutionality of such a plan to the district court.

### D. ATTORNEYS' FEES

■ Pursuant to 42 U.S.C. § 1988, the district court awarded Gilleo $74,813.45 in attorneys' fees. The amount includes a 15% enhancement over the lodestar amount to compensate Gilleo's attorneys for taking the case on a contingency basis. In *City of Burlington v. Dague*, —— U.S. ——, ——— ———, 112 S.Ct. 2638, 2643–44, 120 L.Ed.2d 449 (1992), the Supreme Court held that enhancement for contingency is not permitted under certain fee-shifting statutes. Although *Dague* concerns the fee-shifting provisions of the Solid Waste Disposal Act and the Clean Water Act, the Court's analysis applies equally to § 1988. *See id.* at ———, 112 S.Ct. at 2641. We vacate the district court's 15% enhancement, thus reducing the fee award from $74,813.25 to $65,055.00.

### III. CONCLUSION

Ladue's ordinance violates the First Amendment by favoring commercial speech over noncommercial speech and by favoring certain types of noncommercial speech over others. We affirm the district court's permanent injunction, and reduce the court's attorneys' fee award to $65,055.00.

AFFIRMED as MODIFIED.