**STATE of Minnesota, Respondent,**

**v.**

**Larry HOLMBERG, d/b/a Buns & Roses (C5–95–1164), Dennis Buchanan, d/b/a Excalibur Group, Inc., (CX–95–1578), Appellants.**

**Nos. C5–95–1164, CX–95–1578.**

Court of Appeals of Minnesota.

March 26, 1996.

Review Denied May 21, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, Surell Brady, Minneapolis City Attorney, Kristi Lassegard, Assistant City Attorney, Minneapolis, for respondent.

Randall D.B. Tigue, Patrice M. Feterl, Randall D.B. Tigue Law Office, Minneapolis, for appellants.

Considered and decided by KLAPHAKE, P.J., TOUSSAINT, C.J., and MULALLY, J.

## OPINION

EDWARD D. MULALLY, Judge. *

Operators of adult bookstores appeal convictions for violations of the Minneapolis Code of Ordinances (MCO). They argue that the restrictions on adult bookstore windows set out in MCO § 540.410(g) are overbroad and improperly regulate the time, place, and manner of speech. The ordinance is a valid regulation on the time, place, and manner of speech. Minneapolis is not estopped from prosecuting the bookstore owners. The evidence supports the convictions, and we affirm.

## FACTS

This appeal consolidates two separate appeals from criminal convictions for violations of MCO § 540.410(g), which regulates adult bookstores and adult entertainment centers. The ordinance provides in relevant part:

(3) No merchandise or pictures of the products or entertainment on the premises shall be displayed in window areas or any area where they can be viewed from the sidewalk in front of the building.

(4) Window areas shall not be covered or made opaque in any way. No signs shall be placed in any window. A one-square-foot sign may be placed on the door to state hours of operation and admittance to adults only.

Minneapolis Code of Ordinances § 540.410(g).

Appellant Larry Holmberg operates an alleged adult bookstore and entertainment center, Buns & Roses. Steven Poor, a Minneapolis City Building Inspector, observed that Holmberg placed signs over his store windows and that merchandise for sale within the store was visible through the windows. Minneapolis charged Holmberg with violations of MCO § 540.410(g)(3), (4).

Holmberg moved to dismiss the charges against him, arguing that MCO § 540.410(g) was unconstitutional both facially, as an overbroad restriction on speech, and as applied to him, as an invalid restriction on the time, place, and manner of speech. The district

court convicted Holmberg of violating MCO § 540.410(g)(4).

Appellant Dennis Buchanan operates Sex World, an alleged adult bookstore. Poor inspected the Sex World store and from the sidewalk observed signs in the windows and sexual paraphernalia inside the store. Minneapolis charged Buchanan with violations of MCO § 540.410(g)(3) and (4). Buchanan petitioned the court to dismiss the complaint because the statute was overbroad and an unconstitutional restriction on the time, place, and manner of speech. The district court denied these motions and found Buchanan guilty of both charges.

Holmberg and Buchanan now appeal their convictions, alleging that MCO § 540.410(g) is unconstitutional on its face and as applied. They further assert that insufficient evidence supports their convictions. Buchanan also argues that Minneapolis is estopped from prosecuting him for violations of the ordinance.

## ISSUES

I. Is MCO § 540.410(g) constitutionally invalid as an overbroad restriction on speech?

II. Is MCO § 540.410(g) constitutionally invalid as an improper restriction on the time, place, and manner of speech?

III. Does sufficient evidence support the convictions?

IV. Is Minneapolis estopped from prosecuting Buchanan?

## ANALYSIS

■ Evaluating the constitutionality of statutes presents a question of law for a reviewing court. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). A reviewing court is not bound by the district court's interpretation. *Id.*

■ Holmberg and Buchanan allege that MCO § 540.410(g) violates the First Amendment to the Federal Constitution as applied

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

to the states through the Fourteenth Amendment. They allege no separate violations of the Minnesota Constitution. Municipal ordinances are presumed constitutional. *City of St. Paul v. Dalsin*, 245 Minn. 325, 329, 71 N.W.2d 855, 858 (1955). The burden of proving them unconstitutional rests with party attacking their validity. *Id.*

## I. Overbreadth

Overbroad restrictions of expression are unconstitutional. *New York v. Ferber*, 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982). The doctrine of overbreadth, facially invalidating entire statutes, is "'strong medicine'" and should be applied cautiously. *Osborne v. Ohio*, 495 U.S. 103, 122, 110 S.Ct. 1691, 1703, 109 L.Ed.2d 98 (1990) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)). A statute is unconstitutionally overbroad only when the overbreadth is both real and substantial. *Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2918. A statute must substantially affect constitutionally protected speech to trigger the overbreadth doctrine. *Ferber*, 458 U.S. at 773, 102 S.Ct. at 3363. If a statute's legitimate reach "dwarfs its arguably impermissible applications," it is facially valid. *Id.* at 773, 102 S.Ct. at 3363.

Commercial speech receives only limited First Amendment protection. *San Francisco Arts & Athletics v. U.S. Olympic Comm.*, 483 U.S. 522, 535, 107 S.Ct. 2971, 2980, 97 L.Ed.2d 427 (1987). Commercial speech includes any speech for the purpose of trade or to induce the sale of any goods or services. *Id.* Given the limited protections on commercial speech, "application of the overbreadth doctrine is highly questionable." *Id.* at 536 n. 15, 107 S.Ct. at 2981 n. 15.

Adult speech, pertaining to sexual matters on the border between pornography and artistic expression, also receives limited First Amendment protection. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 61, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976). Adult theaters, for example, may be differentiated from other theaters on the basis of the content of their expression. *Id.* at 70–71, 96 S.Ct. at 2452. The Supreme Court recognized that "it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammelled political debate * * *." *Id.* at 70, 96 S.Ct. at 2452. Even though limitations on adult speech may touch on protected speech, "'facial invalidation is inappropriate if the remainder of the statute * * * covers a whole range of easily identifiable and constitutionally proscribable * * * conduct.'" *Ferber*, 458 U.S. at 770, 102 S.Ct. at 3362 n. 25 (quoting *Parker v. Levy*, 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974)).

The Minneapolis ordinance does not regulate the content of expression. The ordinance does not ban adult bookstores. It does not prohibit the advertising of adult bookstores. It only regulates the presentation of adult bookstore windows. The extremely limited scope of the ordinance means that the ordinance is not substantially overbroad.

The ordinance does not substantially deter other forms of protected expression. The ordinance could only deter other adult bookstore window displays. But the speech expressed in these displays receives lesser First Amendment protections as both commercial and adult speech. The ordinance is not void on its face as an overbroad restriction on speech and is properly analyzed as a restriction on the time, place, and manner of expression.

## II. Time, Place, and Manner

Holmberg and Buchanan assert that MCO § 540.410(g) is constitutionally invalid as applied to them as an improper restriction on the time, place, and manner of expression. A valid time, place, and manner restriction on expression must be content-neutral, serve a substantial government interest, and permit alternative avenues of communication. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986).

Content-based restrictions of expression presumptively violate the First Amendment. *Id.* at 46–47, 106 S.Ct. at 928. Holmberg and Buchanan argue that the ordi-

nance is content-based. A regulation of expression is content-neutral if it is "justified without reference to the content of the regulated speech * * *." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). An ordinance may be content-neutral even though it discriminates among different types of expression, as long the ordinance is aimed at secondary effects and not at the content of the expression. *Renton*, 475 U.S. at 47, 106 S.Ct. at 929.

The ordinance does not ban adult bookstores or the sale of adult merchandise; it regulates the windows of adult bookstores. The Minneapolis City Council explained the purpose of the ordinance: "Special regulation of these uses is necessary to insure that these adverse effects will not contribute to the blighting or downgrading of the surrounding neighborhood." Minneapolis Code of Ordinances § 540.410(a). The ordinance, by its own terms, seeks to remedy content-neutral secondary effects, not to suppress the expression of unpopular views.

 The city's motivation behind MCO § 540.410 has already been affirmed as a content-neutral rationale for the regulation of time, place, and manner of speech. *See Alexander v. City of Minneapolis*, 928 F.2d 278, 282–83 (8th Cir.1991) (accepting the purposes stated in MCO § 540.410(a) as content-neutral rationale for zoning restrictions on adult bookstores). The ordinance regulates adult bookstore windows without reference or regard to expressive content; it merely regulates the appearance of store windows. Zoning ordinances designed to combat the undesirable secondary effects of businesses purveying sexually explicit material are properly judged under the content-neutral time, place, and manner test. *Renton*, 475 U.S. at 49, 106 S.Ct. at 929–30.

 A constitutionally valid, content-neutral regulation on the time, place, and manner of speech must also be "designed to serve a substantial governmental interest and allow[ ] for reasonable alternative avenues of communication." *Id.* at 50, 106 S.Ct. at 930. Buchanan and Holmberg argue that the ordinance lacks a substantial government interest and does not provide adequate alternative avenues of communication.

 The ordinance claims to avoid blighting or downgrading of adjacent neighborhoods. MCO § 540.410(a). A city's interest in "preserv[ing] the quality of urban life" must be accorded the highest respect. *Young*, 427 U.S. at 71, 96 S.Ct. at 2453.

 Buchanan and Holmberg suggest that other improper motives underlie the Minneapolis ordinance. An implied or alleged illicit motive behind an ordinance will not invalidate an otherwise proper ordinance. *United States v. O'Brien*, 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968). They argue that the city has singled out adult bookstores and has not addressed other potential causes of urban blight. But the city's decision to address the problems caused by adult bookstores suggests a policy decision to deal with these problems first, not discriminatory treatment. *See Renton*, 475 U.S. at 52–53, 106 S.Ct. at 931–32 (cities may elect to address one urban problem at a time).

 Buchanan and Holmberg argue that the city failed to make factual findings to support its regulation of adult bookstore windows. The First Amendment does not require independent factual research for every regulation; a city may rely on the research and experience of other cities. *Id.* at 51–52, 106 S.Ct. at 931. The city council need only reasonably consider the research relevant to the problems that it seeks to address. *Id.* The legislative history of the Minneapolis ordinance indicates that the city council relied on empirical studies done in Indianapolis and other cities that demonstrated the damaging secondary effects of adult bookstores on urban environments and the need for regulation. Minneapolis City Plng. Comm'n Report at 2 (Sept. 10, 1986). The city thus examined relevant research on serious secondary problems of urban blighting.

 A valid time, place, and manner restriction must also permit reasonable alternative avenues of communication. *Renton*, 475 U.S. at 50, 106 S.Ct. at 930. The ordi-

nance prohibits adult bookstore operators from making their store windows opaque and from placing merchandise in their windows. MCO § 540.410(g). It does not restrict the use of wall signs or other forms of media advertisement for the store and its products or services. Nor does the regulation prohibit the display of merchandise; it merely prohibits the store from displaying merchandise in the store's window. Multiple avenues of expression remain open for operators of adult bookstores.

MCO § 540.410 is a content-neutral restriction on the presentation of adult bookstore and entertainment center windows. It regulates the presentation of those windows without regard to the content of any message presented in the windows. It serves substantial government interests and provides ample alternative avenues of communication. The ordinance is a constitutionally valid restriction on the time, place, and manner of speech.

### III. Sufficiency of the Evidence

Holmberg alleges that insufficient evidence at trial supported his conviction for violating MCO § 540.410(g)(4). He asserts that the city failed to prove that he operated an adults-only bookstore.

In reviewing a sufficiency of the evidence claim, an appellate court must determine whether, given the facts in a case and the legitimate inferences that can be drawn from those facts, a fact-finder could reasonably conclude that the defendant was guilty of the offense charged. *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978). The evidence must be viewed in the light most favorable to the state. *Id.* The reviewing court must assume that the fact-finder believed the evidence supporting the conviction and disbelieved contrary evidence. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980).

The restrictions on adult bookstore windows apply only to "regulated uses." MCO § 540.410(g). "Regulated uses" are defined in part as adults-only bookstores, adults-only motion picture theaters, and adults-only entertainment centers. MCO § 540.410(a). An adults-only bookstore is defined as:

An establishment having as a substantial or significant portion of its stock in trade, books, magazines, films for sale or viewing on premises, by use of motion picture devices or other coin-operated means, and other periodicals which are distinguished or characterized by their principal emphasis on matters depicting, describing or relating to nudity, sexual conduct, sexual excitement or sadomasochistic abuse, as defined below, or an establishment with a segment or section devoted to the sale or display of such material, for sale to patrons therein.

Minneapolis Code of Ordinances § 540.410(b)(1).

Photographs of Holmberg's establishment, Buns & Roses, which were admitted at trial, display multiple window signs. The opaque window signs proclaim: "NUDE Dancing," "ADULT BOOK STORE," "VIDEO BOOTHS," "XXX MOVIES," "RUBBER GOODS," "XXX MAGAZINES," "NUDE DANCERS! ON STAGE ...," "Beautiful LADIES LIVE ON STAGE," and "XXX DANCERS ON STAGE." Poor testified that through the window of the store he could see "adult magazines with illicit sexual images on them * * *." The complaint against Holmberg referred to an earlier court determination that Buns & Roses was an adult bookstore and adult entertainment center.

The testimony and exhibits produced at trial provide adequate evidence that Buns & Roses was an adults-only bookstore selling sexually-oriented materials in various media as its principal stock in trade.

Holmberg argues that the city never produced any estimate of the percentage of Buns & Roses inventory consisting of sexually-explicit materials. The ordinance does not require any specific percentage; it merely requires that a substantial or significant portion of the store's stock in trade consists of sexually-oriented material. The evidence produced at trial sufficiently supports Holmberg's conviction for violating MCO § 540.410(g).

Buchanan disputes the sufficiency of the evidence supporting his conviction for

violations of MCO § 540.410(g)(4). He asserts that the city failed to prove that signs were placed in any window of his Sex World store because the signs were not directly attached to the window pane or its casing. The ordinance provides that "[w]indow areas shall not be covered or made opaque in any way. No signs shall be placed in any window." MCO § 540.410(g)(4). Buchanan's argument focuses entirely on the second sentence of the ordinance and ignores the first. Even if a sign is not strictly in a window, it may violate the ordinance if it covers the window or makes it opaque in any way.

During trial, Poor testified that there were several signs covering the windows at Sex World. Photographs admitted at trial depict signs covering several windows. The testimony and the photographs provided sufficient evidence for the district court to determine that window areas were covered or made opaque.

## IV. Estoppel

Buchanan asserts that Minneapolis is estopped from prosecuting him for violations of MCO § 540.410(g). Building Inspector Poor had a previous encounter with Buchanan. In the spring of 1994, the Excalibur Group, Inc. challenged MCO § 540.410 in federal district court. Poor discussed the city's concerns about another adult book shop, the Broadway Book, with Buchanan's brother, Jerry Buchanan. During these settlement discussions Poor and Jerry Buchanan discussed the possibility of placing book shelves behind the windows at Broadway Book. Poor told Jerry Buchanan that he could comply with the ordinance by placing the backside of a bookshelf against a window at the Broadway Book. Poor further explained that the discussion merely considered hypo-thetical compromises between the parties. Poor testified that Dennis Buchanan was present during these conversations, but Poor dealt with Jerry Buchanan and directed his remarks to him.

■ Buchanan argues that Minneapolis is estopped from prosecuting him as a matter of constitutional law because Poor told his brother that affixing signs behind a window pane would satisfy MCO § 540.410(g)(4). Buchanan asserts that prosecution under these circumstances violates due process.

See Raley v. Ohio, 360 U.S. 423, 425 79 S.Ct. 1257, 1260, 3 L.Ed.2d 1344 (1959) (estopping contempt prosecution when the Ohio Committee on Un–American Activities permitted, but Ohio court refused, a witness's exercise of his privilege against self-incrimination); Cox v. Louisiana, 379 U.S. 559, 573, 85 S.Ct. 476, 485, 13 L.Ed.2d 487 (1965) (reversing the conviction of a civil rights leader who relied on a picketing permit issued by a police chief and was subsequently convicted of violating a picketing location restriction).

The facts of the present case suggest no violations of due process. First, Poor spoke to Jerry Buchanan, not to the defendant, Dennis Buchanan. Second, the alleged representations related to the Broadway Bookstore, not Sex World. Third, the above-cited cases relate to specific and formal governmental authorization to exercise a constitutional right. The present case relates to informal comments of a zoning inspector made during the course of settlement discussions in an unrelated case. The informal comments made during those proceedings cannot estop subsequent prosecution of another person for another store as violative of due process.

■ Buchanan further argues that equitable estoppel bars Minneapolis from prosecuting him. Equitable estoppel may bar criminal prosecutions for violations of zoning laws. State v. Liepke, 403 N.W.2d 252, 256 (Minn.App.1987). Application of equitable estoppel presents a question of law that this court reviews de novo. Alwes v. Hartford Life & Accident Ins., 372 N.W.2d 376, 378 (Minn.App.1985). The party invoking estoppel must establish wrongful conduct by the government. Ridgewood Dev. Co. v. State, 294 N.W.2d 288, 292 (Minn.1980). The party must also demonstrate expenditures unique to the proposed project that would not be otherwise usable. Id. If these elements are proven, the court must consider whether the equities advanced by the individual outweigh the public interest that estoppel would frustrate. Id.

The facts of the present case do not bar prosecution by equitable estoppel. First, there is no demonstration of government misconduct. Poor's comments were made during the course of attempts to settle a

zoning dispute relating to Broadway Book. Poor made no statements related to the windows at Sex World. These attempts at compromise during litigation do not rise to the level of misconduct. Second, Buchanan did not make any unique expenditures. He acquired signs. The signs may be bulky, but they are movable fixtures that are otherwise usable for advertisement. Because Buchanan fails to meet the basic requirements for the imposition of equitable estoppel against the government, the court does not weigh the comparative equities. Minneapolis is not barred by equitable estoppel from prosecuting Buchanan.

## DECISION

Minneapolis Code of Ordinances § 540.410(g) is not a constitutionally over-broad restriction on expression and is a constitutionally valid, content-neutral restriction on the time, place, and manner or speech. Sufficient evidence supports appellants' convictions, and Minneapolis is not estopped from prosecuting Buchanan for violations of the ordinance.

**Affirmed.**