HANSEN, Circuit Judge,
dissenting.
Because I believe that the City’s determination that Mr. LaTour’s sign violated the City’s sign ordinance was based solely on the message displayed on his sign, the district court should have applied strict scrutiny analysis. Accordingly, I would reverse and remand the case for reconsideration using that test.
The ordinance itself bans all flashing and blinking signs of any kind, regardless of the content they display. Mr. LaTour was prosecuted because his flashing sign displayed content other than the time and temperature. The owners of other flashing signs (which the parties agree operate — that is the signs flash or blink' — -in the very same way that Mr. LaTour’s sign does) but which display the time and temperature were not and are not prosecuted, nor are their signs ordered to be removed. The application by the City of its ordinance is, therefor, not accomplished in a content neutral way, because the message on the sign’s display (time and temperature versus something else) is what determines whether or not the sign will be permitted to be used and whether or not its owner will be criminally prosecuted. That the City’s enforcement of its ordinance is content-based is further confirmed by our court’s statement of the facts, ante at 1095, that “[ajfter LaTour used the sign to display political messages, City officials ordered him to remove the sign.... ”
A ban on all flashing or blinking signs because of a desire to promote traffic safety and aesthetics would be content-neutral under our prior case of Excalibur Group Inc. v. City of Minneapolis, 116 F.3d 1216 (8th Cir.1997), simply because it is “justified without reference to the content of the regulated speech.” Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). But a city’s policy of allowing some blinking or flashing signs to display as content the time and temperature, but prohibiting other blinking or flashing signs that display different content (e.g., “Dow Up 16” or, as Mr. LaT-our’s sign said, “Choose Life”) can only be based upon or enforced by specific reference to the regulated speech, as opposed to observing only its method of display.
*1101 In City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), Cincinnati applied an ordinance against handbill distribution to prohibit freestanding newsracks on public property that contained commercial handbills, but allowed similar newsracks that contained newspapers. The city claimed its regulation was content-neutral because its justifications for the regulation — safety and aesthetics — were unrelated to the content of the prohibited handbills. The Supreme Court rejected the argument because “the very basis for the regulation is the difference in content between ordinary newspapers and commercial speech.” Id. at 429, 113 S.Ct. 1505. The Court noted that it had “expressly rejected the argument that discriminatory treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas.” Id. (internal citations and quotations omitted). Because “whether any particular newsrack [fell] within the ban [was] determined by the content of the publication resting inside the newsrack,” the ban was content-based “by any commonsense understanding of the term.” Id.
Likewise here. Whether any particular blinking sign is ordered removed or its owner prosecuted is determined by the content of the message exhibited on the sign. The city’s decision to enforce its ban against some blinking signs and not others is determined solely by the message the sign displays. Benign time and temperature messages are permitted; all others, benign or biased, are not. Such an enforcement policy is surely content-based by a “commonsense understanding of the term,” because it is only after considering the content displayed that the city decides to act against a particular sign.
Because I believe the district court should take the first cut at determining whether or not the ordinance as applied passes strict scrutiny, I would reverse its judgment and remand the case for further consideration. Accordingly, I respectfully dissent.